IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARSENAL, INC., t/a ARSENAL ASSOCIATES; and 5301 LLC., <br> Plaintiffs, <br> v. <br> LARRY AMMONS; PETER AMMONS; MELISSA BULLARD; BEN AMMONS, AMMONS SUPERMARKET LLC; and WAKEFERN FOOD CORPORATION, <br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION <br> No. 14-1289 |

**December 2, 2014**                                                                                               **Anita B. Brody, J.**

      Plaintiffs Arsenal, Inc. and 5301 LLC (collectively "Arsenal") bring suit against defendant Wakefern Food Corporation ("Wakefern"), as well as Larry Ammons, Peter Ammons, Ben Ammons, Melissa Bullard, and Ammons Supermarket LLC (the latter five constituting the "Ammons Defendants," and all six collectively "Defendants") for promissory estoppel and a variety of economic torts. Arsenal claims Defendants engaged in three years of sham negotiations with Arsenal, negatively impacting Arsenal's proposed real estate development project. Wakefern and the Ammons Defendants both moved to dismiss all counts. For the reasons discussed below, I granted both motions in part and denied them in part.[1]

---

[1] Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332.

1

I.	BACKGROUND

Arsenal once owned[2] the land comprising the Frankford Arsenal, a former U.S. Army ammunition plant in Northeast Philadelphia responsible for armaments during the Civil War and each of the world wars.  Arsenal intended to turn the defunct plant into a large shopping center.  To that end, it negotiated with several potential businesses to lease space.

In particular, Arsenal approached Wakefern, a cooperative that owns and controls the ShopRite trademark.  Compl., ECF No. 1, Ex. E ¶ 25.  Though Wakefern owns the trade name it does not directly operate any of the stores.  Instead, the forty-five members of the Wakefern cooperative individually own and operate specific ShopRites, with permission from Wakefern to use the ShopRite name.  Arsenal alleges that Wakefern represented that the Ammons Defendants (all members of Wakefern) were interested in becoming the operators of a ShopRite at the Arsenal site.  *Id*. ¶ 27.

Arsenal alleges that after approximately a year and a half of "extensive negotiations" that the Ammons Defendants agreed to "the basic terms of a lease" and indicated that they were going to sign a lease with Arsenal.  *Id.* ¶¶ 34, 36, 39.  Negotiations progressed to the point that the parties became ready to execute a Letter of Intent (LOI), a typical precursor of this type of lease.  During a May 9, 2012 meeting however, Wakefern representatives and the Ammons Defendants indicated that a LOI was not required, and that Wakefern would produce a proposed lease to Arsenal within a week of the meeting.  *Id.* ¶ 39.

---

[2] In May 2014, well after the events detailed in the complaint, Arsenal sold a portion of this land to another owner, including the part that would have housed the proposed ShopRite.  *See* ECF No. 35.  Wakefern unsuccessfully argues that this makes the case moot.  The conduct complained of injured *Arsenal and its finances* instead of the property itself.  Because of this, a favorable decision may still offer "meaningful relief," even if Arsenal no longer owns that specific asset.  *See In re Surrick*, 338 F.3d 224, 230 (3d Cir. 2003) (noting the "central question of all mootness problems" (internal quotations and citations omitted)).

Despite these representations, a year of "unexplained delays" took place where neither the Ammons Defendants nor Wakefern produced a lease for Arsenal to sign. *Id*. ¶ 41. On August 8, 2013, Arsenal "reiterated the terms and conditions" of the proposed lease, which had previously been memorialized via email. *Id*.

At a subsequent meeting at one of the Ammons Defendants' existing ShopRites, Wakefern reversed course and demanded a LOI. Arsenal prepared one and sent it to Wakefern on August 20, 2013. *Id*. ¶ 43. Wakefern did not sign the LOI, instead making additional demands, forcing Arsenal to redraft the proposed agreement. *Id*.

Negotiations collapsed sometime in December 2013, after three years of ultimately unproductive exchanges. *Id*. ¶ 25, 50. Arsenal alleges it learned that the Ammons Defendants had been "surreptitiously negotiating with another developer" to open a ShopRite "literally around the corner" from the proposed Arsenal ShopRite (the "Harbison Parcel"). *Id*. ¶ 46. Wakefern denied to Arsenal that it knew anything about the Harbison Parcel, yet ultimately entered into a lease to place a ShopRite there. *Id.* ¶ 48.

Arsenal also claims that during the protracted negotiations that it was approached by George Zallie,[3] another member of the Wakefern cooperative, who was also interested in potentially negotiating a ShopRite lease. Zallie indicated he would be willing to sign a lease if he received permission from the Ammons Defendants. *Id.* ¶ 44. Wakefern's operating rules allow a Wakefern member who first approaches a potential lessor to have exclusive negotiating rights to that location. *Id.* ¶ 28. Other Wakefern members may pursue the lessor, but only if the

---

[3] While Zallie's name does not appear in the complaint, Arsenal identifies him as the prospective Wakefern operator in its initial disclosures. *See* ECF No. 18; *see also Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (noting that for a motion to dismiss court may "consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case"); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1069 (3d Cir. 1984) (noting that judicial records are public records); *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001) (noting that documents filed with the court are judicial records).

first Wakefern member gives her consent. *Id*. ¶ 44. However, this internal rule was inapplicable---Arsenal approached the Ammons Defendants, not the other way around; any member of the cooperative was free to negotiate with Arsenal. *Id.* ¶ 25. Nonetheless, Wakefern represented that the rule applied and that the Ammons Defendants had forbidden Zallie from pursuing negotiations with Arsenal. *Id*. ¶ 44.

Arsenal alleges that Defendants never intended to enter into a lease, and used the negotiations as a pretext to prevent any supermarket from leasing Arsenal's space to reduce competition with the Harbison Parcel ShopRite. *Id.* ¶ 45.

Arsenal has filed suit against Wakefern and the Ammons Defendants alleging promissory estoppel, tortious interference with perspective contractual relations, fraud, negligent misrepresentation, unfair competition, and civil conspiracy. Both the Ammons Defendants and Wakefern moved to dismiss on related grounds each count of the complaint.

## II.     Legal Standard

A motion to dismiss for failure to state a claim should be granted when the plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To determine whether a plausible claim has been pled, a court must "tak[e] note of the elements a plaintiff must plead to state a claim," disregard allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth," and accept as true all factual allegations. *Santiago v. Warminster Twp.*, 629 F.3d 121, 129-30 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 673-74 (2009)) (internal quotation marks omitted); *see also Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010). This "'does not impose a probability requirement,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the

necessary element." *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). However, while it "does not require 'detailed factual allegations,'" a pleading that merely offers "naked assertion[s] devoid of further factual enhancement" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

Finally, even if a complaint is subject to dismissal pursuant to Rule 12(b)(6), a court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (internal quotation marks omitted).

### III. Discussion

Arsenal's complaint lists six counts: promissory estoppel, tortious interference with prospective contractual relations, fraud, negligent misrepresentation, unfair competition, and civil conspiracy. Defendants moved to dismiss all pending claims. I concluded that the promissory estoppel, tortious interference, and fraud claims were adequately pled, but that the remaining claims had to be dismissed.

#### A. Negligent Misrepresentation

A claim for negligent misrepresentation requires proof of: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999) (citing Restatement (Second) Torts § 552).

Arsenal claimed that Defendants misrepresented the future possibility or imminence of a lease by repeatedly promising that such a lease was forthcoming. Arsenal argued that Defendants "*ought to have known*" that they would change their mind and refuse to ultimately sign a lease. Resp., ECF No. 24, at 39.

This claim failed because Defendants never made any statements of fact.  Ordinarily, negligent misrepresentation claims involve existing facts---present and ascertainable aspects of the world at the time the statement is made.  For example:

> A, a county tax clerk, in the performance of his official duties, negligently gives B a certificate stating that the taxes on B's land have been paid. In reliance upon the certificate, C buys the land from B and as a result suffers pecuniary loss when he is compelled to pay the taxes. A is subject to liability to C.

Restatement (Second) of Torts § 552 cmt. k.

By contrast, Arsenal argued that Defendants are subject to liability because they negligently made promises about a lease which did not yet exist.  However, under Pennsylvania law, "promises to do future acts" are not themselves facts; they are predictions about future behavior.  *Wood v. R.R. Donnelley & Sons Co.*, 888 F.2d 313, 318 (3d Cir. 1989).  For this reason "[c]laims for negligent misrepresentation must be based on misrepresentations regarding present facts, not unfulfilled promises to do acts in the future." *Jones v. Flaster/Greenberg P.C.*, No. CIV.A. 13-2771, 2013 WL 6846916, at *7-8 (E.D. Pa. Dec. 30, 2013) (citing *Summit Trust Co. v. Paul Ellis Inv. Assocs.*, No. 2:12-CV-6672, 2013 WL 3967602, at *6 (E.D. Pa. Aug. 2, 2013)).

In response, Arsenal argued that Defendants negligently misrepresented "their state of mind regarding their present intention to enter into a lease agreement."  ECF No. 24, at 39 (emphasis omitted).  Arsenal's claim nonetheless failed because, even though Defendants' present state of mind is a *fact*, it was never *misrepresented*.  In order to misrepresent one's current state of mind, there must be a difference between a defendant's present intention and the statement describing that intention.  Simply, a defendant must say one thing while planning to do another.  *Mellon Bank Corp. v. First Union Real Estate Equity & Mortgage Investments*, 951 F.2d 1399, 1410 (3d Cir. 1991).  However, this reasoning collapses when the defendant's

6

intention concerns his or her future plans. "At the time that a statement is made regarding what the speaker intends to do in the future, the speaker either intends at the moment to take the action he is promising or not. The speaker cannot be negligent as to his future intentions." *Bennett v. Itochu Int'l, Inc.*, 682 F. Supp. 2d 469, 480-81 (E.D. Pa. 2010). Even if Arsenal was correct and Defendants subsequently changed their minds after promising to enter into a lease, no misrepresentation ever took place: under Arsenal's theory, at the time Defendants made their promises they intended---however naively---to carry them out.[4]

Because, under this theory, defendants made no factual misrepresentations, I dismissed the negligent misrepresentation claims against all defendants.

**B. Unfair Competition:**

Arsenal's claim for unfair competition failed as a matter of law because Arsenal, a real estate developer, and Defendants, supermarket operators, are not competitors. "[B]oth the Third Circuit and the District Courts have concluded that in order to state a claim for unfair competition, a plaintiff must allege that it is in competition with the defendant---that is, that the plaintiff and the defendant 'supply similar goods or services.'" *Am. Bd. of Internal Med. v. Von Muller*, No. 10-CV-2680, 2011 WL 857337, at *11 (E.D. Pa. Mar. 10, 2011), *aff'd* (Sept. 12, 2013) (quoting *Granite State Ins. Co. v. Aamco Transmissions, Inc.* 57 F.3d 316, 320 (3d Cir. 1995)).

Arsenal responded by claiming that Defendants' allegedly wrongful conduct fell within the "residual" category of the Restatement (Third) of Unfair Competition, which defines "unfair" business practices. *See* Restatement (Third) of Unfair Competition § 1 (1995) (allowing

---

[4] Arsenal's fraud claim based off of these same future promises alleges a factual misrepresentation because the promises were knowingly false at the time they were made. Defendants misrepresented their present intent to take a future action when they said that a lease was possible even when they knew they had no intention of ever entering into one. *See Mellon Bank*, 951 F.2d at 1410.

7

recovery for any "act or practice[] . . . determined to be . . . unfair . . . taking into account the nature of the conduct and its likely effect on both the person seeking relief and the public"); *Giordano v. Claudio*, 714 F. Supp. 2d 508, 521 (E.D. Pa. 2010) ("[W]e recognize that the Pennsylvania common law tort of unfair competition is coextensive with the definition set forth in the Restatement (Third) of Unfair Competition."). Even if this were true, it nonetheless missed the point. The conduct, however wrongful, must emanate from a business' competitor to be actionable. *See Granite State*, 57 F.3d at 320 ("[W]e think that the Supreme Court of Pennsylvania would hold that a *competitor* of the insured, but not its *customer* can assert a claim . . . under 'unfair competition'" (emphasis added)).[5]

Because the parties do not compete against each other, I dismissed Arsenal's unfair competition claims against all defendants.

### C. Conspiracy

In Pennsylvania, "to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (citing *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997))

Arsenal's civil conspiracy claim was dismissed because it failed to allege that the Ammons Defendants and Wakefern conspired with an unlawful purpose. "[M]alice is an

---

[5] It is telling that both cases Arsenal cites to rebut this argument involve claims between competitors. *See Synthes (U.S.A.) v. Globus Med., Inc.*, No. CIV.A. 04-CV-1235, 2005 WL 2233441, at *1 (E.D. Pa. Sept. 14, 2005) ("Two competitors in the spinal implant disc industry are accusing each other of unfair and illegal business practices."); *Pottstown Daily News Pub. Co. v. Pottstown Broad. Co.*, 192 A.2d 657, 663 (Pa. 1963) ("[T]he [plaintiff] has a commercial package of news items to service its advertising business upon which to base a cause of action in tort *against a competitor* allegedly converting the news items to its own uses in pursuit of advertising." (emphasis added)).

essential part of a cause of action for conspiracy." *Burnside v. Abbott Labs.*, 505 A.2d 973, 980 (Pa. Super. Ct. 1985) (citing *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979)). Under Pennsylvania law, a defendant acts with malice only when the *sole* purpose of the agreement is to injure the plaintiff. *Thompson*, 412 A.2d 472 (dismissing civil conspiracy claim because "[t]here [were] no facts of record which indicate[d] that [defendant] acted *solely* to injure appellants").

Arsenal failed to meet this high standard. The complaint says almost nothing about any formal agreement between Wakefern and the Ammons Defendants besides the conclusory statement that such an agreement exited. *Compare* Compl., ¶ 92 *with Shankin v. Harborview Motrg. Loan Trust Motrg. Loan Pass Through Certificate Series 2007-5 ex rel. Deutsche Bank Nat'l Trust Co.*, No. 12-CV-3736, 2013 WL 3957147, at *3 (E.D. Pa. July 31, 2013) (dismissing complaint that merely stated "Defendants acted in concert with each other to perpetuate fraud and predatory landing" and that defendants "had an agreement" (citing *Twombly*, 550 U.S. at 555)).

Arsenal also did not allege that the two acted with an illegal purpose. To the contrary, Arsenal's theory was that Defendants conspired to achieve a legitimate end: to enrich themselves and their existing businesses. Indeed, their complaint alleges that Defendants "conspired and colluded to prevent another supermarket from being established in the area . . . *in order to reduce competition with their pre-existing ShopRites*." Compl., ¶ 45 (emphasis added). Though defendants allegedly achieved this goal by unsavory, even fraudulent means, these allegations were not enough to satisfy Pennsylvania's standard of malice for civil conspiracy. *See Barker v. Hostetter*, No. CIV.A. 13-5081, 2014 WL 1464319, at *31 (E.D. Pa. Apr. 15, 2014) ("The fact that it may have been necessary to deceive Plaintiffs, or to otherwise willfully and maliciously

9

commit various torts against them . . . does not equate to an allegation that the conspiracy was formed with the sole intent to injure Plaintiffs."); *Morilus v. Countrywide Home Loans, Inc.*, 651 F. Supp. 2d 292, 313 (E.D. Pa. 2008) ("Even though Countrywide has shown that Ms. Morilus' actions amounted to fraud, the commission of the act itself does not necessarily indicate that the plaintiffs acted with the specific intent to injure Countrywide. The plaintiffs were guided by personal interests separate from any alleged desire to cause harm to Countrywide."); *Spitzer v. Abdelhak*, No. CIV. A. 98-6475, 1999 WL 1204352, at *9 (E.D. Pa. Dec. 15, 1999) (dismissing civil conspiracy claim that elsewhere included adequately pled allegations of fraud because "[a]s Plaintiffs have stated elsewhere, the defendant's purpose of the conspiracy was to benefit themselves personally and professionally").

Because an unlawful agreement with requisite intent was not sufficiently pled, I dismissed Arsenal's civil conspiracy claims against all defendants.

### D. Claims Against Ben Ammons and Melissa Bullard

In addition to Ammons Supermarket LLC, Arsenal's complaint also lists Larry, Peter, and Ben Ammons, as well as Melissa Bullard, as individual defendants. Ben Ammons and Melissa Bullard moved to dismiss on the grounds that none of the counts are adequately pled against them as individuals.

The accusations against Ben Ammons and Melissa Bullard were the sort of "threadbare" allegations *Twombly*'s heightened pleading regime seeks to police. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Arsenal's complaint mentions the two only twice. The first is while identifying them as parties and listing their addresses. Second, Arsenal alleges that they, along with every other defendant, attended a May 9, 2012 meeting with Arsenal. Compl., ¶ 39. At that meeting, "all defendants" advised Arsenal that an LOI was not necessary. *Id*.

Taken in isolation, these allegations were insufficient to sustain any cause of action against them.  *Forcine Concrete & Const. Co. v. Manning Equip. Sales & Servs.*, No. CIV. A. 08-2926, 2010 WL 2470992, at *3 (E.D. Pa. June 14, 2010) (dismissing fraud claims against one of six defendants because only one conversation was alleged that did not itself amount to fraud).

I dismissed all claims against Ben Ammons and Melissa Bullard.

### IV.     Conclusion

For the reasons above, I granted Wakefern's motion to dismiss in part and denied it in part.  I also granted the Ammons Defendants' motion to dismiss in part and denied it in part.  I dismissed all claims against Ben Ammons and Melissa Bullard.  The promissory estoppel, tortious interference, and fraud claims against Wakefern, Ammons Supermarket LLC, Larry Ammons and Peter Ammons were sufficient to warrant discovery.  I dismissed the remaining claims against these defendants.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:               Copies **MAILED** on _____ to: